# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

TAMMY LYNN W.N., )
)
        *Plaintiff* )
)
v. ) No. 1:18-cv-00113-LEW
)
NANCY A. BERRYHILL, )
*Acting Commissioner of Social Security,* )
)
        *Defendant* )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a housekeeper. The plaintiff, who is proceeding *pro se*, seeks remand primarily on the basis that the ALJ did not consider evidence of record from her treating endocrinologist, Ana Mendoza, M.D., obtain updated evidence from Dr. Mendoza, or obtain any evidence at all from treating eye doctor Alesia Higgins, D.O., of Family Eyecare or treating social worker Lesley Tyler, L.C.S.W. *See generally* [I]temized [S]t[ate]m[en]t of [S]pecific [E]rrors ("Statement of Errors") (ECF No. 16) & Exh. 16-1 thereto. She also argues that the ALJ failed to consider her diagnosis of adjustment disorder with anxiety and identifies a number of typographical or factual errors in the record. *See generally* Statement of Errors.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Following the filing of her statement of errors, the plaintiff also filed a standalone form completed by a treating nurse practitioner, Sharon Piper, P.M.H.-N.P., dated June 12, 2018. *See* ECF No. 18. The commissioner reasonably construes this filing as a motion for a so-called "sentence six remand." *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 16-19.

For the reasons that follow, on the showing made, I recommend that the court deny the motion for remand and affirm the commissioner's decision.

## I. The ALJ's Decision

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2019, Finding 1, Record at 12; that she had the severe impairments of anxiety and personality related disorders, Finding 3, *id.*; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional impairments: she was able to be reliable and sustain two-hour blocks of time at simple tasks at a consistent pace without significant interruption from mental symptoms over a normal workday or week, was able to interact with coworkers and supervisors in a normal work setting but unable to work with the public, and was able to adapt to routine changes, avoid common hazards, and make basic decisions, Finding 5, *id.* at 15; that she could return to past relevant work as a housekeeper, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id.* at 20; and that she, therefore, had not been disabled from August 5, 2014, her alleged onset date of disability, through the date of the decision, July 26, 2017, Finding 7, *id.* at 21-22. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the

final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

## II. Motion for Sentence Six Remand

### A. Applicable Legal Standards

Sentence six of 42 U.S.C. § 405(g) provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).

Typically, a request for a sentence six remand concerns "new evidence . . . tendered after the ALJ decision." *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir. 2001) (citation and internal quotation marks omitted). Sentence six allows for a "pre-judgment remand" and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings. *See, e.g.*, *Seavey v. Barnhart,* 276 F.3d 1, 13 (1st Cir. 2001); *Freeman v. Barnhart,* 274 F.3d 606, 610 (1st Cir. 2001).

On a cautionary level, the First Circuit has observed that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided — to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir. 1987). Thus, prejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is new and "material," as in "necessary to develop the facts of the case fully[.]" *Id.* at 139.

New evidence of an infirmity or impairment is not automatically material. The party seeking remand must show that the evidence is not merely cumulative and that consideration of

the evidence is essential to a fair hearing, *see id.*; in other words, that the earlier decision "might reasonably have been different" had the evidence been considered by the commissioner, *id.* at 140 (citation and internal quotation marks omitted). There is a temporal concern, as well. The evidence must be material to the issue of "the claimant's condition during the time period for which benefits were denied[,]" as opposed to the development of a new disability. *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988).

**B. Discussion**

In her form dated June 12, 2018, N.P. Piper indicated that the plaintiff's disabling conditions are major depression, recurrent, moderate, and generalized anxiety, that she could not engage in employment for 30 or more hours per week, and that she would be unable to do so for "[a]t least one year or longer[.]" ECF No. 18.

At oral argument, the plaintiff observed that she could not have submitted this document sooner because it did not yet exist. However, she did not address the question of how this evidence could alter the outcome of her case. This is an insufficient showing to obtain a sentence six remand.

In any event, as the commissioner argues, *see* Opposition at 18, nothing on the face of the Piper document demonstrates that it is "material," as in "necessary to develop the facts of the case fully," *Evangelista,* 826 F.2d at 139.

N.P. Piper writes in the present tense, expressing no opinion concerning the plaintiff's condition during the relevant time frame, from August 5, 2014, through July 26, 2017. *See* ECF No. 18. She identifies no facts or findings in support of her opinion. *See id.* She describes no specific limitations flowing from the plaintiff's depression and anxiety. *See id.* Finally, the sole opinion that she does provide – that the plaintiff is disabled and cannot work more than 30 hours per week – "is an opinion on an issue reserved to the commissioner and, thus, entitled to

4

no special significance even if offered by a treating source[,]" *Brown v. Berryhill*, No. 1:17-cv-00196-JAW, 2018 WL 1891572, at *4 (D. Me. Apr. 20, 2018) (rec. dec., *aff'd* May 9, 2018) (citing 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3)). "[T]he failure of an [ALJ] to adopt a treating medical source's opinion on an issue reserved to the commissioner cannot, standing alone, provide the basis for remand." *Id.* (citation and internal quotation marks omitted).

The plaintiff having failed to meet her burden of demonstrating that the ALJ's decision might reasonably have been different if the ALJ had the benefit of review of the Piper form, I recommend that her motion for a sentence six remand be denied.

### III. Statement of Errors

#### A. Applicable Legal Standard

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

5

**B. Discussion**

The plaintiff complains that (i) the ALJ failed to consider evidence from St. Joseph Endocrinology (Dr. Mendoza) that was of record and stamped as received by the commissioner on March 24, 2016, (ii) the ALJ failed to obtain updated records of Dr. Mendoza or any records of Family Eyecare (Dr. Higgins) or L.C.S.W. Tyler, (iii) the ALJ failed to consider her diagnosis of adjustment disorder with anxiety, and (iv) the record contains a number of typographical and factual errors. *See generally* Statement of Errors. For the reasons that follow, I find no harmful error.

**1. Failure To Consider Endocrinology Record**

The plaintiff first complains that, although the ALJ considered and credited the assertedly false statement of treating physician's assistant Joanne Reiniger, P.A.-C., that she was noncompliant with treatment for her hyperthyroidism, he ignored evidence from her treating endocrinologist, Dr. Mendoza. *See* Statement of Errors at [1]. At oral argument, she contended that this evidence, if properly considered, would have countered the notion that she was noncompliant with her hyperthyroidism treatment.

For three reasons, this argument is unavailing.

First, the ALJ did not ignore the record to which the plaintiff refers, a seven-page note of a February 23, 2016, office visit with Dr. Mendoza, marked as Exhibit 2F. *See* Record at 346-52. He mentioned it in deeming the plaintiff's hyperthyroidism, or Graves' disease, nonsevere, explaining:

> The record . . . reflects that the [plaintiff] has a thyroid condition called Grave[s'] [d]isease, treated with Methimazole (Ex. 2F/6). Her most recent treatment notes reflect noncompliance with treatment (Ex. 9F/2). This condition is amenable to proper control by adherence to recommended medical management and medication compliance. The medical evidence record reveals that there are no more than slight

6

> functional limitations associated with this impairment. Accordingly, it is considered a non-severe medically determinable impairment.

*Id*. at 13.

Second, the Mendoza record does not call into question the Reiniger record (Exhibit 9F) on which the ALJ relied. The plaintiff had been diagnosed with hyperthyroidism only a few weeks prior to the February 23, 2016, Mendoza visit, and, during that visit, Dr. Mendoza prescribed Methimazole to treat the condition. *See id*. at 351. Thus, the plaintiff's compliance with treatment could not have been an issue as of that time. *See id*. By contrast, in the note dated May 12, 2017, on which the ALJ relied, Dr. Reiniger indicated that the plaintiff's chief complaint was that her thyroid medication was almost gone and that she did not want to drive to Bangor to see Dr. Mendoza for a refill. *See id*. at 405. Dr. Reiniger noted that she spoke with the plaintiff "about the importance of her continuing to follow with endocrinology for this[,]" that the plaintiff had "some significant effects of noncompliance with treatment[,]" and that there were "multiple social services in place to help her get a ride to Bangor." *Id*. at 406.

Third, even if, contrary to the above finding, the Mendoza record called into question the plaintiff's noncompliance with her hyperthyroidism treatment, noncompliance was not the only basis on which the ALJ deemed the plaintiff's hyperthyroidism nonsevere. He also concluded that the medical evidence revealed "no more than slight functional limitations associated with this impairment." *Id*. at 13.

At oral argument, the plaintiff stated that her hyperthyroidism causes her eyes to bulge and become dry. However, the ALJ reasonably construed the Mendoza record as revealing no more than slight functional limitations. Dr. Mendoza noted that, although the plaintiff's husband had "noticed bilateral eye proptosis worse in [the] past year[,]" the plaintiff had no eye dryness, double vision, or eye pain, and her "main complaint is increased appetite," leading to weight gain. *Id*. at

7

346.[2]  The ALJ also gave great weight to the opinions of agency nonexamining consultants Archibald Green, D.O., and Donald Trumbull, M.D., who had the benefit of review of the February 23, 2016, Mendoza note, that the plaintiff's hyperthyroidism was nonsevere.  *See* Record at 13, 75-76, 98-99.

The ALJ, thus, duly considered the February 23, 2016, record of Dr. Mendoza.  Even if he had not, the plaintiff fails to demonstrate that he erred in concluding that her hyperthyroidism condition imposed no more than slight functional limitations and, hence, was nonsevere.

### 2.  Failure To Obtain Records

The First Circuit has explained:

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the [Commissioner] need proceed no further.  Due to the non-adversarial nature of disability determination proceedings, however, the [Commissioner] has recognized that she has certain responsibilities with regard to the development of the evidence and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the [ALJ], without undue effort, to see that the gaps are somewhat filled as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

*Torres-Pagán v. Berryhill*, 899 F.3d 54, 59 (1st Cir. 2018) (quoting *Currier v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 594, 598 (1st Cir. 1980)).  "[A] remand to the [Commissioner] is appropriate where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing."  *Id*. at 60 (quoting *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991)).

---

[2] "Proptosis" is a synonym for "exophthalmos," which means "[p]rotrusion of one or both eyeballs[.]"  Stedman's Medical Dictionary 631, 1459 (27th ed. 2000).

The plaintiff faults the ALJ for failing to obtain updated records from Dr. Mendoza or any records from Dr. Higgins or L.C.S.W. Tyler despite her reports that she had begun, or was about to begin, treating with those providers. *See* Statement of Errors at [1]; Record at 250, 293.

Yet, nothing in the record before the ALJ indicated that the plaintiff's hyperthyroidism claim was substantial or that the missing Mendoza and Higgins records were necessary to a reasoned evaluation of that claim.

Both Drs. Green and Trumbull deemed the plaintiff's hyperthyroidism nonsevere. *See* Record at 75-76, 98-99. As the commissioner observes, *see* Opposition at 7, the plaintiff herself did not indicate at hearing that the condition had any impact on her ability to work. When the ALJ asked her to identify the "number one reason" why she was unable to work, she testified that it was because she could not get along with that many people. Record at 54-55. The only testimony she gave regarding her hyperthyroidism was that the medication she took for it had caused her to gain weight. *See id*. at 56. Yet, the ALJ separately addressed her obesity, *see id*. at 13, and she does not challenge his findings regarding that condition, *see generally* Statement of Errors.

In addition, as the commissioner points out, *see* Opposition at 6, the plaintiff did not call attention to the missing records when afforded the chance well prior to her hearing to review and comment on the record, even though she submitted a detailed list of corrections, *see* Record at 304-08. When provided a second opportunity at hearing to object to the record, she stated that she had no objection. *See id*. at 45-47.

Nor does the plaintiff otherwise demonstrate that "further evidence is necessary to develop the facts of [her hyperthyroidism claim] fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." *Torres-Pagán*, 899 F.3d at 60 (quoting *Heggarty*, 947 F.2d at 997). At oral argument, the plaintiff contended, as she had in arguing that the ALJ

erred in failing to consider the Mendoza note that was of record, that the missing Mendoza and Higgins records would have called into question the ALJ's finding that she was noncompliant with her hyperthyroidism treatment. Yet, as discussed above, the ALJ made an alternative finding that there was no evidence that the plaintiff's hyperthyroidism imposed more than slight functional limitations. *See* Record at 13. The plaintiff has not shown otherwise.[3]

Turning to the missing Tyler records, the ALJ recognized that the plaintiff's claim predicated on depression and anxiety was substantial, in the sense that he deemed those impairments severe and limited the plaintiff to the performance of simple tasks entailing no contact with the public. *See* Findings 3, 5, *id*. at 12, 15. Yet, nothing in the record indicated that the Tyler notes were necessary to a reasoned evaluation of the plaintiff's claim.

First, while the plaintiff submitted a handwritten note to the commissioner stating that she had an appointment to see L.C.S.W. Tyler on October 21, 2016, *see id*. at 293, she did not note that the Tyler records were missing when she performed what appears to have been a careful review of the record in advance of her June 22, 2017, hearing before the ALJ, *see id*. at 306-08. Nor, when afforded a chance to object to the record at hearing, did she object on that or any other basis. *See id*. at 45-47.

Second, as the commissioner observes, *see* Opposition at 12, during the plaintiff's hearing before the ALJ, she submitted a treatment note from P.A. Reiniger but submitted no notes from L.C.S.W. Tyler, who worked for the same practice, *see* Record at 26, 405-08.

---

[3] The plaintiff has not proffered copies of the missing Mendoza or Higgins evidence. While it is not essential that a claimant do so to demonstrate prejudice, *see Torres-Pagán*, 899 F.3d at 60 & n.8, the absence of that proffer prevents the court from scrutinizing those records to determine whether prejudice is shown. The record does contain an undated letter to the plaintiff from Dr. Mendoza (then going by the name of Dr. Mendoza Salazar) that was submitted to the Appeals Council. *See* Record at 2, 31. However, this letter weighs against a finding that consideration of the missing Mendoza records was essential to the plaintiff's claim. Dr. Mendoza indicated that, on recent testing, the plaintiff's thyroid was "2.73[,]" which "is now normal[,]" and that a recent ultrasound of the thyroid revealed that it had "decreased in size and there [are] no nodules." *Id*. at 31.

Third, and finally, as the commissioner notes, *see* Opposition at 14-15, when the ALJ asked the plaintiff at hearing if she had "received any type of treatment for either anxiety or personality disorder that you're aware of[,]" she testified:

> I wouldn't say that. I am going to see a social worker now but that's just – that's actually new. So, I don't know if that would be called treatment or not.

*Id*. at 55-56. She added that she would be going "to see the social worker on a regular basis." *Id*. at 57. This testimony suggested that there was little, if anything, by way of treatment notes of L.C.S.W. Tyler to be obtained as of the date of hearing.[4]

Nor does the plaintiff otherwise demonstrate that "further evidence is necessary to develop the facts of [her claim based on depression and anxiety] fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." *Torres-Pagán*, 899 F.3d at 60 (quoting *Heggarty*, 947 F.2d at 997). The plaintiff did not explain either in her statement of errors or at oral argument how review of the missing Tyler records might have affected the ALJ's assessment of the limitations caused by her mental impairments or his ultimate determination that she was capable of returning to past relevant work as a housekeeper. Nor did she proffer copies of the Tyler records, as a result of which this court cannot scrutinize them in determining whether prejudice is shown.

At bottom, the plaintiff has not shown, nor is it otherwise apparent, that the ALJ had a heightened duty to obtain the missing Mendoza, Higgins, and Tyler evidence or that, even if he

---

[4] Prior to her hearing, the plaintiff submitted a form updating her medical treatment, date-stamped as received by the commissioner on March 2, 2017, in which she indicated that she had seen L.C.S.W. Tyler on five occasions in 2016: October 31, November 8, November 22, December 5, and December 19. *See* Record at 310. Payment receipts attached to the Reiniger note that she submitted at hearing indicated that she was due to see L.C.S.W. Tyler on June 9, 2017, and July 3, 2017. *See id*. at 407-08. However, she did not call any of those visits to the ALJ's attention at hearing or indicate that it would be important to obtain those notes.

11

erred in failing to obtain those records, they were essential to a fair hearing of her claims. Remand, accordingly, is unwarranted on the basis of this point of error.[5]

### 3. Failure To Consider Diagnosis of Adjustment Disorder with Anxiety

The plaintiff next faults the ALJ for failing to consider a diagnosis of adjustment disorder with anxiety made by both a treating physician's assistant, Margaret Swan, P.A., and an agency examining consultant, Peter J. Ippoliti, Ph.D. *See* Statement of Errors at [2]; Record at 371, 392.

As the commissioner rejoins, *see* Opposition at 7, a diagnosis, standing alone, does not establish the severity of an impairment or its resulting limitations, *see, e.g., Dowell v. Colvin*, No. 2:13-cv-246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014), and the ALJ gave great weight both to the Ippoliti opinion and those of two agency nonexamining consultants who had the benefit of review of that opinion, Brian Stahl, Ph.D., and Lewis F. Lester, Ph.D., *see* Record at 19, 75, 78-79, 101-04. Moreover, in her statement of errors and at oral argument, the plaintiff identified no mental limitations that the ALJ failed to assess. *See generally* Statement of Errors.

Remand, accordingly, is unwarranted on the basis of this point of error.

---

[5] In *Torres-Pagán*, the First Circuit found reversible error in an ALJ's failure to obtain recent psychiatric records for a *pro se* claimant "with arguably severe special needs." *Torres-Pagán*, 899 F.3d at 59. The claimant, who had been granted SSI benefits as a child based on mental retardation, was denied ongoing benefits following a reevaluation for continuing eligibility after he turned 18. *See id*. at 55-56. On retesting, he had been determined to have a below-average IQ of 84. *See id*. at 56, 59. Prior to his hearing, the claimant began psychiatric treatment and submitted at least four separate forms apprising the commissioner of that fact. *See id*. at 57. At hearing, the claimant identified physical, rather than mental, maladies as the cause of his inability to work and testified that he believed he could perform jobs identified by a vocational expert. *See id*. at 57. Yet, when he attempted to inform the ALJ of his psychiatric treatment at the end of the hearing, the ALJ seemed disinterested and asked no follow-up questions regarding his claims of sleep disorder, anxiety, and bipolarity. *See id*. at 59-60. In the circumstances, the First Circuit found that "the claim of psychiatric disability seemed substantial on its face with gaps that should have been filled." *Id*. at 60. Although the claimant had not proffered his psychiatric records on appeal, the court concluded that "the relevance of [his] mental health treatment records to the ALJ's determination of whether [he] suffered from mental health impairments is plainly evident[,]" and he "was prejudiced by having his psychiatric treatment ignored by the ALJ." *Id*. This case is distinguishable in that the plaintiff did not claim to have an intellectual disorder and had not previously been found disabled, her hyperthyroidism claim was not substantial on its face, the ALJ recognized that she had substantial claims of depression and anxiety, and it is not "plainly evident" that any of the missing records is necessary to a fair consideration of her claims. *Id*.

#### 4. Typographical and Factual Errors

The plaintiff, finally, complains that the record contains both typographical and factual errors. *See generally* Statement of Errors. Her attention to detail is commendable. However, the asserted errors do not warrant remand.

As a threshold matter, to the extent that the plaintiff challenges certain factual findings based on evidence that was not before the ALJ, or attempts for the first time to correct her answers provided on disability forms, *see generally id.*, an appeal of an ALJ's decision does not present an opportunity to amend or elaborate upon the evidence before that ALJ. Rather, it constitutes a review of whether, on the evidence before the ALJ, he or she reached a decision that was supported by substantial evidence. *See, e.g.*, *Manso-Pizarro*, 76 F.3d at 16 (standard of review of commissioner's decision is whether the determination made is supported by substantial evidence). Nevertheless, even taking into account all of the asserted errors, remand is unwarranted because they do not call into question the ALJ's decision.

On their face, a number of the plaintiff's asserted errors and clarifications have no bearing on the merits of this case: (i) minor typographical errors in the transcript of the plaintiff's hearing before the ALJ, *see* Statement of Errors at [2], (ii) the plaintiff's observation that she does not self-diagnose, *see id.*, (iii) the plaintiff's assertion, in an apparent response to Dr. Stahl's finding that her anxiety was nonsevere, *see* Record at 76, that she has almost all of the symptoms for general anxiety disorder, *see* Statement of Errors at [2], a point mooted by the ALJ's finding that her anxiety was severe, *see* Finding 3, Record at 12, (iv) errors in descriptions of two former jobs, neither of which is the former job that the ALJ found the plaintiff capable of performing, *see* Statement of Errors at [2]; Finding 6, Record at 20, (v) an error in the date on which the plaintiff moved to Dover-Foxcroft, *see* Statement of Errors at [2], (vi) an omission of personality disorder

from the plaintiff's list of impairments limiting her ability to work, *see* Statement of Errors at [2]; Record at 212, a point mooted by the ALJ's finding that she had a severe personality disorder, *see* Finding 3, Record at 12, (vii) an error in a reference in a disability form to the plaintiff's hyperthyroidism as "hypothyroidism," Statement of Errors at [2]; Record at 216, which had no impact on the ALJ's assessment of the condition, *see* Record at 13, (viii) an erroneous answer of "no" to the question posed in a disability form of whether the plaintiff was currently taking medications, *see* Statement of Errors at [2]; Record at 252, a point mooted by the ALJ's recognition that she took medication for both her hyperthyroidism and psychiatric conditions, *see* Record at 13, 15, and (ix) an error by an emergency room physician in describing the plaintiff's chief complaint as abdominal, rather than rib, pain, *see* Record at 372, when rib pain is not a basis for her claim of disability.

The remaining asserted errors, in context, also can be discerned to have no bearing on the merits of this case:

1. The plaintiff's observation that she now knows that her shortness of breath, which the ALJ observed that a treating provider had attributed to deconditioning, was caused by anxiety. *See* Statement of Errors at [1]; Record at 13. Any error is immaterial. Regardless of the etiology of the plaintiff's breathing issues, the ALJ deemed them nonsevere. *See* Record at 13.

2. The plaintiff's challenge to the ALJ's findings that contemporaneous treatment notes "expose no significant problems relating with neighbors or other community members" and that crocheting was among her reported activities that "require substantial concentration." Statement of Errors at [2]; Record at 14. She asserts that she does have "problems with neighbors and community" and that, in her case, "no concentration [is] needed for crocheting." Statement of Errors at [2]. Even assuming error, it is immaterial. The ALJ identified other factual and opinion

evidence that constitutes substantial evidence in support of his overarching findings that the plaintiff had only moderate limitations in interacting with others and in concentration, persistence, and maintaining pace. *See* Record at 14, 19.

3. The plaintiff's challenge to Dr. Stahl's notation, in assessing her social limitations, that she "[s]hops for an hour or two[,]" and Dr. Lester's notation, in summarizing the record evidence, that she shops for clothes. Statement of Errors at [2]; Record at 88, 98. The plaintiff asserts that she does not shop for clothes and that she goes out twice a week, not every day, to do errands and that the two hours each day includes travel time. *See* Statement of Errors at [2]. Even assuming error, it is immaterial. The ALJ ultimately relied in part on the fact that the plaintiff shopped, not on the nature or length of that activity. *See* Record at 14.

4. The plaintiff's assertion that a treating provider wrongly described her thyroid as small on examination. *See* Statement of Errors at [2]; Record at 357. Even assuming error, it is immaterial. The ALJ found that the plaintiff's hyperthyroidism imposed no more than slight functional limitations, *see* Record at 13, and she has not shown otherwise.

Remand, accordingly, is unwarranted on the basis of these final points of error.

### IV. Conclusion

For the foregoing reasons, I recommend that the motion for remand be **DENIED** and the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 20th day of January, 2019.

<u>/s/ John H. Rich III</u><br>
John H. Rich III<br>
United States Magistrate Judge